Our last case is HTP, Inc. v. First Merit Group Holdings, Inc. Mr. McLaughlin Thank you, Your Honors, and happy holidays. My name is Dennis McLaughlin. I'm with the Western Washington Law Group, and I'd also like to acknowledge Madam Clerk and your law clerks that are here today as well. The plaintiff, who is the appellant before you, seeks to have a chance to gather the evidence and bring before a jury whether First Merit Group and its principals were agents of HTP, the plaintiff, hired to negotiate a purchase of certain technology. Whether HTP developed certain technology outside of the technology that was owned, that they were seeking to purchase, and whether they took that technology and the information they used it for their own benefit instead of the benefit of their principal. Judge Kuhnhauer, who I respect very much, said, no, you can't do that because a portion of that technology was owned by somebody else. We submit that he was incorrect. He should have, at the very least, given us leave to amend and given us a shot at it. This was dismissed at the early pleading stages. And embedded in... Counsel, I'm very sorry. It may be a little hard of hearing, but when you whisper like that, I don't hear you. I'm sorry. How's that? Perfect. Okay. Thank you very much, because if you don't hear me, it's not effective oral argument. Exactly. And embedded in here is a very interesting what is the standard of review issue, which I will get to at the end if I can. But the record in this case had more facts developed on both sides as to the agency issue. One of the things that Judge Kuhnhauer implicitly or expressly found was that, well, it never got to the point of you having an agreement. But that was disputed. That would have been denied. Summary judgment on that should have been denied based on the evidence that was produced. How that wasn't sufficient to get by an initial pleading stage 12B1 motion, I don't understand. And even if you look at the Worth v. Selden case, which says you've got to be given at least one chance to produce more affidavits before dismissal, and that's the United States Supreme Court case, we were given none. The evidence was, I think, overwhelming that there was an agreement. Mr. Barry Lee, the principal, said that they signed a nondisclosure agreement with HTTP. Second, we claim that the agreement to raise money and to pursue the technology acquisition and develop the other technologies that they sold as a package deal to neighbors in Texas for more than what we had to purchase it for was overwhelming. There was an email between HTTP and the principals at First Merit Group in April of 2020. Mr. Lee acknowledged the nondisclosure agreement. And then Mr. Small sends a letter in 2021 saying that the hundreds of thousands of dollars that we had loaned you for the purposes of testing and developing the technologies, you owe it to us. So they allege there was an oral loan agreement. They say they signed a nondisclosure agreement. And we showed evidence of a principal-agent agreement. Not only that, but exhibit I to Mr. Dean's declaration. That showed a subscription agreement outlining this exact three-part deal on how they were going to do it. They were going to gather money from Canadian and other investors and have what's called a special purpose vehicle. The money was going to be held in escrow. And when HTTP was able to get the purchase price negotiated with the target company, Hitech, for the acquisition of just the ICA technology, they would then release the money from escrow, allow HTTP to complete the acquisition, and then they would acquire the assets of HTTP. And HTTP, according to the way we understood the deal and what we testified to, would own 75% of the resulting company. The other 25% would go as appropriate to the investors and to the principals. Therefore, Judge Kuhnhauer's conclusion that this was speculative shouldn't stand. We should reverse on that basis. There was concrete injury alleged, and there wasn't concrete injury disproven. There is an issue. It's so intertwined with the facts of the underlying merits that dismissal on a 12B1 was inappropriate. Had this been a trial and he would have said that, that's one thing. Had we had the opportunity for discovery and the overwhelming weight of evidence was that there was no genuine issue of material fact, that would have been one thing. But to deny us the ability to have a CR 56 motion, to deny us the ability to get evidence to prove our side of the case, is where Judge Kuhnhauer was wrong. We don't have to go quite that far, I don't think. Now, I'd like to talk about the interesting issue that I found as to the standard of review. They're saying the standard of review is that the underlying facts have to be, you have to show clear error. I don't think that's correct in a 12B1. And they cite some cases that do suggest that, but when you track them all the way back, it starts off with a case where there was a trial, and they said that you have to use the clearly erroneous standard. Then they said only if the court finds standing is it judged for the clear error standard. There is no case that specifically says, if you do not find standing, that it's there. And the case I'd like to turn your attention to on that is American Arab Anti-Discrimination Commission versus Thornborough, 970 Fed Second 501. And it specifically limits the application of that to where you do find standing. But it has been evolving, and I think it's a problem that should be addressed. And I'll save the rest of my time for rebuttal, Your Honors, unless you have any more questions. You may. Thank you. Mr. Small. Thank you, Your Honors, and good morning. Sean Small on behalf of the appellees and defendants in the underlying matter. The appellees are requesting that this court affirm the district court's dismissal on 12B1, lack of standing. Generally, HDP admits that it assigned all of its rights to the technology, as well as any after-acquired improvements on that technology. The idea that there was something that was outside of this agreement was looked at by the district court and specifically analyzed with regard to the assignment language, as well as the formation documents. So remember, when HDP accepted money from JECI and formed a new entity, it gave up all of its rights. That's what JECI exchanged the money for. So when the new entity was formed, HITECH, HITECH was now the owner of all of that technology. Right, but the claim here is, simplifying a little bit, what they're saying is, we were trying to set up this deal to buy this. You were our agent. Instead of working in our interest, you went and bought it for yourself. Maybe that's wrong, right? But that on its face is a fairly standard breach of fiduciary duty claim. So what's the basis for saying that they don't have standing to assert that? Yeah, I think you're getting to the heart of the issue, which is, who owned the IP? So HITECH owns the IP. HTP is the minority interest owner of that company. They own 48%. They wanted to buy out JECI, the majority owner. Okay, so what we have here is a situation where, if we're assuming those facts that you just asserted, that my client actually was an agent, which we're obviously opposing as there not being any support for that, but assuming that they were an agent, and you're looking at it from a fiduciary standpoint, the first question you have to ask is, what were they hired to do? In your analogy, they were hired to acquire that majority interest, acquire that particular technology. But let's look at who actually owns it. HITECH owns it, and JECI controls it. JECI did not want to sell it. JECI sought and obtained a TRO, an injunction, and an order of contempt because of HTP's attempt and efforts to try to raise money through the technology that it did not own to actually buy out JECI. So the standing question comes to its heart when you look at who controls and owns the technology, and that's JECI. JECI did not want to sell. Maybe that's a reason that the breach of fiduciary duty claim will ultimately fail, but what you're describing seems very close to, if not identical to, a defense on the merits to the claim. And I'm having trouble seeing why it's appropriate for the court to resolve that in the context of a jurisdictional ruling. There was both a facial and a factual 12b6 attack on the complaint. And part of that ultimately came down to the question of, did HTP ever have an ownership interest? Could it ever have acquired the technology? And the simple answer to that is absolutely not. So your argument really depends on, in effect, the court finding the ownership question, correct? There's no dispute of that question, Your Honor. HTP does not deny that JECI was the majority interest owner and does not deny that HITECH was the owner of that technology. HTP never claims that it owned the technology. And in fact, all of the orders of injunction and contempt would, again, affirm that they didn't have it. This concept, the one piece of your question, which I want to get back to because it's important, you inferred that the defendants in this case acquired the technology. That is also not something that happened. That's not anything that happened whatsoever. There has never been any type of transaction between the defendants and HITECH or JECI whatsoever with regard to the technology. So this question of what was actually usurped is important. And it gets back to the fundamental question. HTP wants to just kind of vaguely say that something was usurped, a business opportunity, we were going to make this deal. But the standing question is significant here because HTP never had the ability to sell anything. It didn't own anything. So the defendants here... At that point. They never have. No, but I thought the argument was that the prospect of this deal would put them back in a different situation down the road. Sure. If JECI was willing to sell the technology, then they would have been able to buy it. And so the question... There was no prohibition against that. I mean, wasn't there an opportunity here? It may have been a long shot, but at least there was an opportunity here. Was there not? Absolutely. And in fact... Isn't that enough? Enough for what? Enough for an opportunity. But again, think about what the claim is. The claim is that this technology was sold to third-party neighbors. It's the loss of the opportunity that's... that is at stake here, is it not? I mean, it is a loss. That's not what they're claiming. They're claiming the loss of opportunity was the fact that the technology was sold to this third-party neighbors in Texas. They're making absolutely no claims that our clients interfered with JECI or HITECH or HTP's ability to engage in contractual relations with them. There is not a single claim about that in the complaint whatsoever. There's not a single statement of it in the declarations. They are not making that claim. They are claiming that the defendants here interfered through some opportunity because the technology allegedly went to a third-party in Texas. Again, that technology, even if it did happen, would not be HTP's claim. It would be HITECH's claim. HITECH would have to be the one to enforce its IP rights and seek infringement or seek some type of corporate interference if that happened, not HTP. And that's why we come back to the standing question. That's what Judge Kuhnhauer was able to cut through a lot of the allegations made in the complaint and get to the heart of the issue, which is what rights did HTP have? What did they own? What could they have possibly done? If HTP had acquired JECI's interest in the company and owned the technology, we're having a different conversation. Because at that point, if the defendants usurped that opportunity, used inside information, we're talking about a claim at that point. But it never happened. That's why there's no standing. They have to have some fundamental ownership and control of that technology, which they never obtained. And in fact, the orders of contempt, the orders of injunction would even further support the fact that they never even came close to having that control because JECI was taking active steps to keep them from trying to take the technology. JECI was making the claim against HTP that they're now making against the defendants here, which, again, does not track because they've never owned the technology. They never had the right to enter into a third-party relationship with this party out of Texas. Although they tried really hard, they actually were found in contempt for trying to do so. So suppose for a moment that we agreed with you on all of that. What was the basis for dismissing without leave to amend? Again, the leave to amend, and we're... and have offered case law that that is an abusive discretion standard. So obviously, Judge Kuhnhauer had an opportunity to analyze that question. It was put before him. Here's the problem. It doesn't matter what claims or allegations HTP makes. They never owned the technology. They never had the ability to say and have an injury in fact because they did not possess it. They had no ability to say, this is ours and you did something to violate our rights with regard to this technology. And because of the assignment language that they entered, that puts a box around the technology. There isn't anything outside that box. And the minute that they make claims with regard to that technology, it simply fails. And so there's nothing they can say to change that. And in your view, there's nothing they could say by way of an allegation that we had some opportunity to acquire it and we lost because of the alleged breach of fiduciary duty, we lost that opportunity? Again, the opportunity, if we're looking at the complaint and what they're alleging, the complaint there would have to be something, an entirely different claim, which they're not making. But I mean, I guess part of what's motivating this question is we've said many times that, and I think the Supreme Court has said too, if the district court determines that it lacks subject matter jurisdiction, it doesn't have power to do anything more. And therefore, a dismissal for lack of jurisdiction must be without prejudice. So how is it appropriate for the district court to do more than dismiss without prejudice? Well, I think for judicial economy, looking at the underlying basis of the claim, if you're effectively making a claim that another party should make, then there's nothing you can say that will change that. And that's what we're talking about here. This is HITECH's claim, if they have one. This is not HTP's claim. So they can't change their role unless they somehow acquired HITECH, which they have not done. So they don't possess the rights at a fundamental level to ever say anything in their complaint that would relate to this type of infringement, this type of interference of a business opportunity claim. So I think Judge Kuhnhauer got it right by not allowing them to amend because if there's nothing they can say that would change that. Thank you. Obviously, there was nothing discussed about the other aspects related to the default judgments being vacated, but we'll rest on the briefing on that one. In the absence of any questions on that, I'd like to... Thank you, Your Honor. Thank you, Judge Miller. I appreciate the fact that you elucidated the claim so well. That's exactly it. There was a mentor of mine here. His name was Llewellyn Pritchard, and he's retired now, but he always told me in the context of legal, if someone steals your idea, claim it. He goes, don't let anyone get away with doing that. Now, in an unrelated context, as a lawyer, if I come up with the idea and somebody else claims it, let people know that you came up with it. Here's what the evidence is in this case. Mr. Dean was the one who was negotiating with neighbors. He needed $10 million to acquire the ICA technology from high-tech power. And they had also developed three other pieces of technology, graphene production technology, carbon recapture technology, and desulfurization technology. They were going to combine the three technologies that HDP had developed that would not be subject to an automatic assignment, as explained in our reply brief specifically. Combine it with the ICA technology, and they knew that neighbors was going to buy it for $75 million. That may be the amount, but more than what they were going to pay for it. They contacted First Merit Group to help them raise the money. They gave them all that information that they would not have otherwise had. Rather than consummating the last leg of the deal, which is acquiring the ICA technology, they took the three independent technologies, the chief technology officer, and they don't deny that they sold it to neighbors for $75 million. We would have had to pay $10. The $65 million is a concrete injury. If you had an opportunity to amend your complaint in short statement, what would the claim be? Well, the claim would be that we developed these three technologies independent, that were not subject to the after-acquired clause of the merger, that we also had a business relationship with Evan Johnson, our chief technology officer and our board of directors, who was the man who could make this thing work. And we had ongoing negotiations and a business expectancy with neighbors that we turned over to them to negotiate the neighbors deal while we negotiated the purchase of that ICA technology. And they took it all. Did they hurt high tech? Maybe to the tune of $10 million, because that's what we would have had to pay to acquire the technology. That may decrease our damages from $75 million to $65 million. But we still have $65 million worth of damages, because they took our three technologies, and they didn't buy the other technology from high tech. And they went over to neighbors and packaged up the whole deal, which they don't deny. Thank you. Thank you. Thank both counsel for their hopeful arguments. And the case is submitted.
judges: O'SCANNLAIN, McKEOWN, MILLER